Troutman Sanders LLP
875 Third Avenue
New York, New York  10022

troutman.com



**Bennet J. Moskowitz**
bennet.moskowitz@troutman.com

November 29, 2019

**BY ECF**

Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:**   *Katlyn Doe v. Darren K. Indyke and Richard D. Kahn as Joint Personal Representatives of the Estate of Jeffrey E. Epstein, et al.*, 1:19-cv-07771 (PKC)

Dear Judge Castel:

  We represent Defendants Darren K. Indyke and Richard D. Kahn, Co-Executors of the Estate of Jeffrey E. Epstein (incorrectly named herein as "Joint Personal Representatives" of the Estate of Jeffrey E. Epstein) (the "Estate"), Nine East 71st Street, Corporation ("Nine East"), Financial Trust Company, Inc. ("FTC"), NES, LLC ("NES"), Florida Science Foundation, Inc. ("Florida Science"), Maple, Inc. ("Maple"), LSJ, LLC ("LSJ"), HBRK Associates, Inc. ("HBRK"), and JEGE, Inc. ("JEGE," and together with Nine East, FTC, NES, Florida Science, Maple, LSJ and HBRK, the "Corporate Defendants"; and the Corporate Defendants together with the Estate, the "Defendants") in the above-referenced action.  We write pursuant to Your Honor's Individual Practices § 4(A) to set forth the bases for Defendants' anticipated motion: (i) pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice Counts I, III – VI and VIII - XV of Plaintiff's Complaint (ECF #1) and Plaintiff's demand for punitive damages in their entirety and Counts II and VII to the extent they are time barred, for failure to state a claim; and (ii) pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss all claims against Florida Science and LSJ with prejudice for lack of personal jurisdiction.

  The initial pretrial conference in this matter is scheduled for December 13, 2019 at 10:45 a.m.  Defendants propose the following briefing schedule for their anticipated motion to dismiss: Defendants' moving brief by December 20, 2019; Plaintiff's response brief by January 20, 2020; and Defendants' reply brief by February 4, 2020.



1. **Plaintiff's claims against the Corporate Defendants are insufficiently plead because they are based on threadbare, conclusory statements and impermissible group pleading.**

As a matter of context, Plaintiff alleges Jeffrey E. Epstein ("<u>Decedent</u>") caused Plaintiff to engage in "commercial sexual acts" with Decedent starting in 2007 when Plaintiff was 17 years old and ending in 2014. (Compl. ¶¶ 52, 62, 68, 70, 90.) Defendants do not anticipate moving to dismiss all claims against the Estate.[1]

However, the Court should dismiss Plaintiff's claims against the Corporate Defendants because they are based on threadbare recitals of the elements of various causes of action and conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff's allegations do not sufficiently state what any person acting on behalf of the Corporate Defendants specifically did or failed to do that gives rise to liability against any of them, let alone when and where such specific acts or omissions occurred. Nor does Plaintiff allege how any Corporate Defendants caused Plaintiff's alleged damages.

Rather, Plaintiff merely alleges that Nine East, Maple, LSJ and Florida Science own or occupy, or in some cases formerly owned or occupied, residences or an office where Decedent committed torts against Plaintiff. (Compl. ¶¶ 26, 61, 102.) Plaintiff further alleges JEGE, which allegedly owns a jet Plaintiff traveled on, and NES and HBRK, which Plaintiff "believe[s]" employed an unidentified person who once told Plaintiff to trust Decedent, somehow "facilitated" – without any explanation – Decedent's alleged misconduct. (*Id.* ¶¶ 26; 61; 102.)

Based on these sparse, vague allegations, Plaintiff concludes the Corporate Defendants "owed a duty to Plaintiff to treat her in a non-negligent manner and not to commit, or conspire to commit, or cause to be committed intentional, criminal, fraudulent, or tortious acts against Plaintiff." (*Id.* ¶ 20.) Plaintiff further alleges, also in conclusory fashion, that Decedent "in concert with and through the assistance of numerous other individuals and related corporate entities, including Corporate Defendants and employees thereof, recruited, enticed, harbored, transported, obtained, maintained, or solicited Plaintiff knowing that means of fraud and coercion were being used to cause Plaintiff to engage frequently in commercial sexual acts that were continual and frequent during each of those years." (*Id.* ¶ 90). Plaintiff further asserts various other generic conclusions, including that one or more of the Corporate Defendants

---

[1] Plaintiff asserts three causes of action against the Estate: two duplicative battery claims (Counts I and II) and a claim asserting violations of The Trafficking Victims Protection Act (Count VII). As explained herein, the Estate anticipates moving to dismiss at least one of the duplicative battery claims and to partially dismiss Count VII as time barred.



"used coercion" (*id.* ¶ 99), gave "assistance" to Decedent (*id.* ¶ 43), or "employed" individuals who assisted Decedent (*id.* ¶ 73).

Plaintiff compounds these pleading deficiencies by relying heavily on impermissible group pleading against the Corporate Defendants. (*See, e.g.*, Compl. ¶¶ 41, 44-45, 48-49, 58, 64, 88, 90, 93, 99-100, 122.) The few allegations that seek to distinguish the Corporate Defendants from each other are vague or allege neutral background facts, such as whether a particular Corporate Defendant owned certain real property. (*See, e.g.*, Compl. ¶ 60.)

> Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants … A plaintiff cannot merely lump all the defendants together in each claim and provide no factual basis to distinguish their conduct.

*Ochre LLC v. Rockwell Architecture Planning & Design*, 12-cv-2837, 2012 U.S. Dist. LEXIS 172208, at *16-17 (S.D.N.Y. Nov. 28, 2012) (citing *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001); *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Plaintiff's own allegations and facts subject to judicial notice on a pre-answer motion to dismiss[2] show Plaintiff has no basis to name the Corporate Defendants in this action. Plaintiff concedes some of the Corporate Defendants have not existed for years; that when they did exist, they allegedly served mundane functions such as holding title to real property. (*See, e.g.*, Compl. ¶ 102.) Plaintiff alleges the Corporate Defendants that are still active serve innocuous functions as well (*e.g.*, Plaintiff alleges that Maple holds title to real property (*see id.*)).

### a. Count III: Negligent Security Against Nine East

Plaintiff's legal theory against Nine East appears to be that, because Nine East owned Decedent's New York residence where certain alleged misconduct took place, Nine East is necessarily liable to Plaintiff. (Compl. ¶ 26.) This is not the law in New York. *See* 85 NY Jur Premises Liability § 212 (2) ("Generally, the law does not impose a duty to control the conduct of third persons to prevent them from harming others even where, as a practical matter, the defendant could have exercised such control.").

---

[2] On a motion to dismiss, the Court may take judicial notice of information concerning corporate entities, as reflected in public records. *See da Cui v. E. Palace One, Inc.*, 17-cv-6713, 2019 U.S. Dist. LEXIS 161120, at *24 n.13 (S.D.N.Y. Sep. 20, 2019) (finding court may take judicial notice of an entity's formation and dissolution date as contained in New York State Department of State, Division of Corporation records). *See also Murtha v. N.Y. State Gaming Comm'n*, 17-cv-10040, 2019 U.S. Dist. LEXIS 159783, at *10 (S.D.N.Y. Sep. 17, 2019) ("A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit." (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013))).



Moreover, Plaintiff fails to plead any negligent conduct by Nine East beyond mere labels and conclusions. The non-conclusory allegations in the Complaint about Nine East state only one of two unremarkable things: (i) it conducted business in New York (Compl. ¶¶ 7, 15); and (ii) it owned Decedent's New York residence (*id.* ¶¶ 26, 60, 89, 102, 137-140). There are no non-conclusory allegations establishing any individuals did anything on Nine East's behalf, negligently or otherwise.

Even if there were sufficient allegations in the Complaint demonstrating Nine East's negligence—which there are not—there are no allegations explaining how that negligence caused Plaintiff's injuries. To the contrary, Plaintiff alleges Decedent's promises and payments of money to Plaintiff caused Plaintiff to repeatedly return to Decedent's residence where torts occurred—not that Nine East was somehow responsible. (*See, e.g.*, *id.* ¶¶ 53-57, 64-65, 69.) Accordingly, the Court should dismiss Count III for failure to state a claim.

### b. Count IV: Negligence Against FTC

Plaintiff's negligence claim against FTC also fails. Plaintiff's legal theory against FTC appears to be that, because FTC employed Decedent at one time, FTC is necessarily liable for Decedent's alleged misconduct. Plaintiff's claim against FTC is one of negligent supervision.

Under New York law, in addition to the elements of negligence,[3] a plaintiff alleging negligent supervision must show: (1) the tortfeasor and the defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) the tort was committed on the employer's premises or with the employer's chattels. *Man Zhang v. City of N.Y.*, 17-cv-5415, 2019 U.S. Dist. LEXIS 163485, at *14 (S.D.N.Y. Sep. 19, 2019) (citing *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015); *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

Plaintiff fails to state a negligence claim against FTC because Plaintiff alleges nothing more than mere labels and conclusions regarding FTC's conduct. (*See, e.g.*, Compl. ¶ 158 (alleging, without any supporting facts, that FTC "operated in part to satisfy the personal needs of [Decedent]").) The only allegation containing any specificity about FTC asserts Decedent would sometimes conduct business for FTC while receiving sexually explicit massages. (*Id.* ¶ 167.) However, neither this nor any other allegation in the Complaint identifies anyone else acting on FTC's behalf or that such individuals knew about the massages. Nor does Plaintiff allege any of Decedent's alleged misconduct occurred on FTC's premises or with its chattels. Therefore, Count IV does not state a claim and should be dismissed.

---

[3] "Under New York law, a plaintiff must establish the following elements to state a claim for negligence: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" *Sofia v. Esposito*, 17-cv-1829, 2018 U.S. Dist. LEXIS 60947, at *10 (S.D.N.Y. Apr. 10, 2018) (quoting *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015)).

Hon. P. Kevin Castel
November 29, 2019
Page 5



### c. Count V: Negligence Against NES

The Complaint similarly fails to state a negligence claim against NES. Plaintiff relies entirely on conclusory allegations against NES including that it "facilitated" Mr. Epstein's "acts" (Compl. ¶ 26) and "caused Plaintiff to engage in commercial sex acts" (*id.* ¶ 87). Such conclusory allegations are not enough to state a claim. *Iqbal*, 556 U.S. at 663.

Plaintiff's allegations made "upon information and belief" (e.g., that upon information and belief NES employed "various employees" who did things such as recruit young females to provide massages to Decedent (*id.* ¶ 181); and that "Associate 7," who was "believed to be employed through NES" told Plaintiff it was okay to show her breasts to Decedent (*id.* ¶ 61)) are also insufficient to state a claim. *See Gilford v. NYS Office of Mental Health*, No. 17-cv-8033, 2019 U.S. Dist. LEXIS 38450, at *14 (S.D.N.Y. Mar. 11, 2019) ("No matter what the pleading standard is, her complaint must at least contain enough factual allegations that are not made upon information and belief to 'raise a right to relief above the speculative level.'" (citing *Twombly*, 550 U.S. at 555)). Therefore, Count V should be dismissed.

### d. Count VI: Negligence Against JEGE

Plaintiff's negligence claim against JEGE does not "raise a right to relief above the speculative level" because it is also based on vague and conclusory allegations. *Twombly*, 550 U.S. at 555. Plaintiff alleges in conclusory fashion that JEGE: "facilitated" Mr. Epstein's acts (Compl. ¶ 26); assisted in arranging transportation for Plaintiff to fly to Florida (*id.* ¶ 82); employed individuals whose "involvement and assistance" caused Plaintiff to believe she had to comply with Decedent (*id.* ¶ 84); "caused Plaintiff to engage in commercial sex acts" (*id.* ¶ 87); and owned a jet on which Decedent flew (*id.* ¶¶ 102, 192--193).

Plaintiff does not assert any non-conclusory allegations establishing: (i) JEGE owed Plaintiff a duty; (ii) JEGE's breach of that duty; and (iii) injury substantially caused by JEGE's breach. *See Esposito*, 2018 U.S. Dist. LEXIS 60947, at *10 (finding conclusory assertion insufficient to support negligence claim). Accordingly, Count VI should also be dismissed.

### e. Counts VIII Through XV: Violations of 18 U.S.C. § 1595 Against Florida Science, Nine East, Maple, LSJ, FTC, NES, HBRK, and JEGE, Respectively

Counts VIII through XV assert each Corporate Defendant violated the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, *et seq.* (the "TVPA"), thereby giving rise to civil causes of action under 18 U.S.C. § 1595. These causes of action fail because Plaintiff alleges nothing beyond mere labels and conclusions to support them. *See Twombly*, 550 U.S. at 555.

Plaintiff alleges each Corporate Defendant: violated 18 U.S.C. § 1591 (making punishable sex trafficking of children or by force, fraud, or coercion) on the conclusory basis that each Corporate Defendant "by and through its management and personnel, knew that means of fraud or coercion, and/or combinations of such means, would be used, and were in fact used, in order to cause Plaintiff to engage in commercial sex acts"; attempted to violate 18 U.S.C. § 1591 and in so doing violated 18 U.S.C. § 1594(a) (making punishable attempted violations of,



among other TVPA sections, 18 U.S.C. § 1591); violated 18 U.S.C. § 1594(c) (making punishable conspiracy with another to violate 18 U.S.C. § 1591) on the conclusory basis that each Corporate Defendant "by and through its management and personnel, conspired with other members of the enterprise, and with other persons and companies, known and unknown, to violate 18 U.S.C. § 1591"; and violated 18 U.S.C. § 1593A (making punishable benefitting financially from peonage, slavery, and trafficking in persons) on the conclusory basis each Corporate Defendant either "by and through its management and personnel knowingly benefitted, financially and by receiving things of value, from participating in a venture … which had engaged in acts in violation of 18 U.S.C. § 1592 and 1595(a), knowing that the venture had engaged in such violations."[4] (Compl. ¶¶ 209 - 278.)

Plaintiff fails to allege any facts supporting these conclusory allegations.  Section 1591 contains two intent requirements: (1) knowingly recruiting a person (or knowingly benefitting from such a venture); and (2) knowing that means of force, threats of force, fraud or coercion will be used by a person or the venture to cause a person to engage in a commercial sex act. *Lawson v. Rubin*, 17-cv-6404, 2018 U.S. Dist. LEXIS 71582, at *35 (E.D.N.Y. Apr. 29, 2018). Moreover, "[t]he participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (emphasis in original) (citing *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).

Plaintiff does not even identify who acted on the Corporate Defendants' behalf during the times relevant to Plaintiff's allegations, let alone what any such person knew that could give rise to TVPA liability against the Corporate Defendants.  The only allegations—which are still not sufficient to state a claim—that even attempt to explain the Corporate Defendants' role in the alleged trafficking is that, "[i]n conjunction with Defendants HBRK and JEGE," transportation was arranged for Plaintiff to fly from New York to Florida "where it was known fraud or coercion would be used to cause the Plaintiff to commit a commercial sex act." (Compl. ¶ 82.)  However, Plaintiff fails to allege who at HBRK and JEGE, if anyone, had such knowledge.

Such conclusory TVPA claims brought against alleged participants in and beneficiaries of alleged trafficking schemes are properly dismissed on a Rule 12(b)(6) motion. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (dismissing TVPA claim against Harvey Weinstein's employer because plaintiff failed to allege any benefits the employer received from participation in Weinstein's alleged sex-trafficking venture); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("The Amended Complaint does not contain any specific factual allegations that plausibly allege Robert [Weinstein] knew of, or participated in, Harvey's [Weinstein] alleged violation of Section 1591 in Cannes."); *Lawson*, 2018 U.S. Dist. LEXIS 71582, at *11 (dismissing TVPA claim where plaintiffs did not allege facts showing defendant knowingly benefited from participation in trafficking venture or knew or acted in reckless disregard of fact that force, threats of force, fraud or coercion would be used to cause plaintiffs to engage in commercial sex act).

---

[4]This particular conclusory allegation is not included in the TVPA Counts against Florida Science (Count VIII) and Nine East (Count IX).  However, Plaintiff alleges each Corporate Defendant violated 18 U.S.C. § 1593A.



Plaintiff's TVPA claims fail for the additional reason that they impermissibly lump the Corporate Defendants' alleged conduct together. As explained above, "[w]here a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre*, 2012 U.S. Dist. LEXIS 172208, at *16-17.

Plaintiff fails to allege a plausible factual basis for the TVPA claims against the Corporate Defendants. Therefore, Counts VIII-XV fail to state a claim and should be dismissed.

**2. Plaintiff's TVPA claims against all Defendants are largely or entirely time-barred.**

No action may be maintained under subsection 18 U.S.C. § 1591(a) unless it is commenced not later than the later of (i) 10 years after the cause of action arose or (ii) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense. 15 U.S.C. § 1591(c). Plaintiff alleges she turned 18 in 2007 and Decedent's alleged misconduct ended in 2014. Plaintiff filed this action on August 20, 2019. Accordingly, Plaintiff's TVPA claims based on alleged conduct occurring after she turned 18 until August 20, 2009 (*i.e.*, 10 years before Plaintiff filed this action) are time barred.

The New York Child Victims Act ("CVA") does not alter this analysis. The CVA created a one-year window period in which civil claims alleging damages "suffered as a result of conduct which would constitute a sexual offense *as defined in article one hundred thirty of the penal law* committed against a child *less than eighteen years of age*" may be filed despite the statute of limitations having already run. CPLR § 214-g (emphasis added). Accordingly, to the extent Plaintiff's TVPA claims are based on alleged conduct that occurred before she turned 18 or conduct which would not constitute a NY Penal Law § 130 offense, the CVA does not revive them.

**3. Plaintiff's first battery claim against the Estate (Count I) is either time-barred or impermissibly duplicative of Plaintiff's second battery claim (Count II) which is at least partially time barred.**

Plaintiff asserts two battery claims: Count I asserts battery based on alleged activity between 2007 and 2014 without referencing NY Penal Law § 130; and Count II asserts battery/violation of NY Penal Law § 130. (Compl. ¶¶ 119, 124.) Count I must be dismissed because it either expired years ago or is entirely duplicative of Count II.

Under New York law, actions for battery must be commenced within one year (CPLR § 215(3)); and actions for personal injury must be commenced within three years (CPLR § 214(5)). To the extent Plaintiff alleges she was a minor at the time of the alleged battery, her time to file her battery claim was tolled until she turned eighteen. CPLR § 208.

According to the Complaint, Plaintiff turned eighteen in 2007. (Compl. ¶ 52.) Therefore, any claim for battery allegedly occurring when Plaintiff was a minor (*i.e.*, in 2007) expired sometime in 2008 (or, if deemed a personal injury claim, in 2010). Any claim for alleged battery/personal injury occurring while Plaintiff was an adult (*i.e.*, from when she turned eighteen in 2007 through 2014 when the alleged misconduct ended) expired by 2017.



As Count I in Plaintiff's Complaint does not allege a NY Penal Law § 130 offense, the CVA does not revive it. Further, as the CVA only revives certain claims based on specific offenses to minors, Count II is also time barred to the extent it is based on alleged conduct that occurred after Plaintiff turned 18 in 2007. *See* CPLR § 214-g.

Even assuming Count I states a NY Penal Law § 130 offense, which it does not, it must be dismissed as entirely duplicative of Count II. *See Price v. L'Oreal USA, Inc.*, 17-cv-0614, 2017 U.S. Dist. LEXIS 165931, at *12 (S.D.N.Y. Oct. 5, 2017) ("Defendants' motion to dismiss the unjust enrichment claim under New York law (see Count V) is granted because it is duplicative of the other claims.").

### 4. Plaintiff's claims for punitive damages must be dismissed because they are precluded by NY EPTL § 11-3.2.

Plaintiff may not recover punitive damages in this action as a matter of law. New York Estates, Powers And Trusts Law provides: "No cause of action for injury to person or property is lost because of the death of the person liable for the injury. For any injury, an action may be brought or continued against the personal representative of the decedent, *but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury*." NY EPTL § 11-3.2 (a)(1) (emphasis added). "Also, 'there is a strong policy against the assessment of punitive damages against an estate on account of wrongful conduct of the decedent.'" *Graham v. Henderson*, 224 F.R.D. 59, 63 (N.D.N.Y. 2004) (quoting *Blissett v. Eisensmidt*, 940 F. Supp. 449, 457 (N.D.N.Y. 1996)).

New York General Construction Law § 37-a defines "personal injury" as including "an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another." Here, Plaintiff's seeks damages based on Plaintiff's core allegations that she was "sexually assaulted by [Decedent]" (Compl. ¶ 64) and "forced" to engage in intercourse with Decedent (*id.* ¶ 68). Accordingly, Plaintiff may not recover punitive damages.

Nor are punitive damages available to Plaintiff under the TVPA, which is a punitive statute. A federal cause of action that is penal in nature, as opposed to remedial, abates upon a party's death. *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 13-cv-5475, 2017 U.S. Dist. LEXIS 123752, at *22 (E.D.N.Y. Aug. 3, 2017). Even where a federal cause of action survives death, punitive damages are unavailable. *See, e.g., Medrano v. MCDR, Inc.*, 366 F. Supp. 2d 625, 635 (W.D. Tenn. 2005) (dismissing deceased plaintiff's claim for punitive damages under 42 U.S.C. § 1981).

### 5. This Court has no personal jurisdiction over Florida Science (Count VIII) or LSJ (Count XI)

Plaintiff fails to show the Court has personal jurisdiction over Florida Science and LSJ. According to the Complaint, Florida Science was a Florida corporation conducting business in Florida (*id.* ¶ 10); and LSJ was a Delaware corporation conducting business in the United States Virgin Islands (Compl. ¶ 12).

Plaintiff has the burden of showing there is personal jurisdiction over LSJ and Florida Science. *See Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, 14-cv-804, 2014 U.S.



Dist. LEXIS 108145, at *10 (S.D.N.Y. Aug. 4, 2014) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). To determine whether personal jurisdiction is proper, courts must look to the forum state's long-arm statute (in this action, New York). *Id.* (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).

CPLR § 302 provides "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state (except defamation); or 3. commits a tortious act without the state causing injury within the state (except defamation), if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a).

With respect to CPLR § 302(a)(1), "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508, 881 N.E.2d 830, 851 N.Y.S.2d 381 (2007)). It is "the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting Siegel, NY Practice § 86 [4th ed]).

Here, Plaintiff fails to allege what business Florida Science and LSJ transact in New York, if any, or how often. Plaintiff's sole allegation arguably connecting Florida Science and LSJ to New York is the conclusory, group allegation that all Corporate Defendants "performed business, in whole or part, in New York." (Compl. ¶ 15.) Plaintiff's allegation is belied by Plaintiff's numerous other allegations establishing Florida Science operated entirely in Florida. (*Id.* ¶¶ 76 – 82.) Plaintiff also fails to allege any facts explaining what business LSJ performed in New York, when it was performed or how often it was performed. Nor does Plaintiff allege that either LSJ or Florida Science has ongoing New York activity sufficient to establish personal jurisdiction under CPLR § 302(a)(3). Accordingly, Plaintiff failed to establish personal jurisdiction over Florida Science or LSJ.

Respectfully submitted,

/s/ Bennet J. Moskowitz
Bennet J. Moskowitz