Troutman Sanders LLP
875 Third Avenue
New York, New York  10022



troutman.com

**Bennet J. Moskowitz**
bennet.moskowitz@troutman.com

June 1, 2020

**ECF**

Hon. Debra C. Freeman
Thurgood Marshall
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:    VE, 1:19-cv-07625-AJN-DCF; Katlyn Doe, 1:19-cv-07771-PKC-DCF; Priscilla Doe,
1:19-cv-07772-ALC-DCF; Lisa Doe, 1:19-cv-07773-ER-DCF; Anastasia Doe, 1:19-cv-
<u>11869-MKV-DCF</u>**

Dear Judge Freeman:

We represent Defendants in the above-referenced actions.  We write on behalf of all parties to
update the Court regarding settlement and discovery.

As the Court is aware, there have been no settlement discussions in any of the individual
above-referenced cases.  The parties' efforts regarding settlement have been singularly focused
on the establishment of a voluntary, independent claims resolution program, the Epstein
Victims' Compensation Program.  We are pleased to report that, this past weekend, the Co-
Executors entered into a tripartite agreement with claimants' counsel (specifically, counsel for
Plaintiffs in the above-referenced actions, Brad Edwards, and counsel for plaintiffs in four other
actions pending before Your Honor, David Boies) and the Attorney General of the United States Virgin
Islands pursuant to which the Program may now move forward.  Earlier today, the Co-
Executors of the Estate of Jeffrey E. Epstein filed in the Superior Court of the Virgin Islands the
status report attached hereto as <u>Exhibit A</u>.  As stated therein, the Co-Executors, with the
support of claimants' counsel and the USVI Attorney General, intend to authorize
commencement of the Program on Monday, June 15, 2020. Most, if not all, of the Plaintiffs in
the above-referenced actions intend to participate in the Program.

Meanwhile, the parties continue to meet and confer in efforts to resolve various discovery
disputes.

Thank you for your attention to this matter.

June 1, 2020
Page 2



Respectfully submitted,

s/Bennet J. Moskowitz
Bennet J. Moskowitz

# EXHIBIT A

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| **IN THE MATTER OF THE ESTATE OF JEFFREY E. EPSTEIN,** | ) ) ) | **PROBATE NO. ST-19-PB-80** |
| **Deceased.** | ) ) ) )) | **ACTION FOR TESTATE ADMINISTRATION** |

### CO-EXECUTORS' STATUS REPORT ON VOLUNTARY COMPENSATION PROGRAM AND PRESENTATION OF PROGRAM PROTOCOL

On November 14, 2019, the Co-Executors of the Estate of Jeffrey E. Epstein (the "Co-Executors") filed their *Expedited* Motion for Establishment of a Voluntary Claims Resolution Program (the "*Expedited* Motion") seeking to establish an independent and voluntary claims resolution program (the "Program") for purposes of resolving sexual abuse claims against Jeffrey E. Epstein, deceased.  As promised in the *Expedited* Motion, the Co-Executors now submit to the Court the detailed Program protocol (the "Protocol," copy attached as **Exhibit A** hereto) designed and developed over several months by independent, nationally recognized claims administration experts with extensive input from the Co-Executors and other interested parties, including claimants and their legal representatives.  Because the need for the Program has grown increasingly urgent and with the support of claimants' counsel and the Attorney General of the United States Virgin Islands, the Co-Executors intend to authorize commencement on **Monday, June 15, 2020** of formal claims resolution proceedings under the Program, absent contrary direction from the Court.

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
 and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 2

## I.    BACKGROUND

As detailed in the *Expedited* Motion and the Co-Executors' subsequent filings with the Court, the Program will provide all eligible claimants an opportunity to receive compensation and voluntarily resolve their claims of sexual abuse against Mr. Epstein through a confidential, non-adversarial alternative to litigation, utilizing a process that is sensitive to the experiences and concern of claimants and treats them with compassion, dignity and respect.[1]

On February 4, 2020, the Court heard extensive witness testimony concerning the Program (February 4, 2020 Hearing Tr. at 103:12-186:14); at that hearing, multiple claimants' counsel also spoke in favor of implementing the Program.  (*Id.* 84:11-85:2; 85:6-19; 92:24-93:8.)  As Your Honor recognized, the Program is not only consistent with the fiduciary duties of the Co-Executors, but in fact "...we agreed that everybody believes this program is a great program..." (*Id.* at 113:24-25.)  That drumbeat of approval continues to swell; since the Co-Executors' most recent filing with the Court concerning the Program,[2] counsel for 69 individual claimants have come forward to the Court in support of the Program.[3]

---

1.  *Expedited* Motion at 1; *see also* Co-Executors' Request for Ruling on *Expedited* Motion for Establishment of a Voluntary Claims Resolution Program (filed December 4, 2019); Co-Executors' Request for *Immediate* Hearing or Conference Regarding *Expedited* Motion for Establishment of a Voluntary Claims Resolution Program (filed December 13, 2019); Co-Executors' Reply to Creditor Jane Doe's Response to Co-Executors' *Expedited* Motion for Establishment of a Voluntary Claims Resolution Program (filed January 15, 2020); Co-Executors' Reply to Government's Opposition to Estate's Motion for Establishment of a Voluntary Claims Resolution Program (filed January 31, 2020); Co-Executors' Status Report on Continuing Efforts to Establish Voluntary Compensation Program and Request for Ruling (filed March 24, 2020); Co-Executors' Corrections to Attorney General's Status Report on Voluntary Compensation Program and Renewed Request for Ruling (filed April 10, 2020).

2.  Co-Executors' Notice of Related Filing, dated April 17, 2020 (attaching Co-Executors' correspondence with claimants' New York counsel concerning commencement of the Program).

3.  *See* Status Report from Claimants dated April 20, 2020 (urging on behalf of 12 claimants that "the Program can and should proceed without delay"); Status Report from Claimants dated April 21, 2020 (stating on behalf of 5 claimants that "permitting the Program to proceed would be in the best interests of the victims at this time"); Motion for Status Conference Regarding the Victim Compensation Program dated April 28, 2020 (seeking on behalf of 52 claimants an Order "permitting the Program to proceed as agreed amongst the parties").

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 3

## II.    THE PROGRAM PROTOCOL

The Program Administrator and Designers have now finalized the Protocol for the

Program, in close consultation with claimants' counsel and the Co-Executors.[4]  As contemplated

in the *Expedited* Motion, the Protocol sets forth the following non-exclusive guiding principles:

- The Program is purely voluntary.  It does not affect any rights a claimant may have unless and until she accepts the offered compensation and executes a release.  A claimant may reject the offer of compensation and may stop participating in the Program and withdraw the claim at any time prior to execution of the release.

- The Program is independent and will in no way be administered, controlled, or overseen by the Co-Executors.  The Program Administrator is responsible for all decisions relating to the review, processing and evaluation of individual claims submitted to the Program.  The Administrator will have final, binding, and exclusive authority to determine claimant eligibility and the valuation of each eligible individual claim.  Decisions of the Administrator made pursuant to the Protocol are not subject to review or modification in any way by the Co-Executors or any other party or entity.

- Subject to total Estate assets available, there is no cap or limitation on the aggregate amount of funds available to compensate all eligible claimants or on the amount of compensation to be made to each individual claimant.  Each individual claim will be evaluated separately by the Program Administrator. The Administrator will determine, in her sole and exclusive discretion, issues of eligibility and the amount of compensation and the Estate will pay all eligible claims based on the Administrator's determination.

- All claimants will be treated with respect, dignity, and fairness without regard to race, color, sexual orientation, national origin, religion, gender, or disability. To ensure claims will be adjudicated fairly, the Program Administrator will manage the process so that all claimants can equally access the Program's claim process.   Individuals with disabilities will be given the opportunity to effectively communicate their claims and to request special process accommodations.

(*See* Protocol at pp. 1-2.)

---

4.   The Attorney General of the U.S. Virgin Islands also expressed her detailed views on the structure and formation of the Program, both through filings with the Court and direct communications with the Program Administrator.

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 4

The Protocol also sets forth detailed aspects of the Program's administration, including eligibility criteria for the Program, proof requirements and claims procedures, the methodology for claims evaluation and determining compensatory awards, and timing and regular reports to the Court, as follows:

- **Eligibility**. The Protocol identifies the criteria to determine whether a claimant is eligible to receive compensation under the Program. (*See* Protocol at pp. 3-4.)

- **Proof Requirements and Claims Procedures**. The Protocol determines what types of supporting documentation or other evidence each individual will be required to submit to substantiate her claim, satisfy Program requirements, and allow the Program Administrator to review, process and evaluate that claim. (*See* Protocol at pp. 4-5.)

- **Claims Evaluation and Determination Methodology**. The Protocol defines the factors and considerations to be used to determine the amount of compensation to be offered to any eligible claimant. (*See* Protocol at pp. 5-6.)

- **Timing**. The Protocol sets forth the timeframe of the Program, including an effective commencement date and deadline for submission of all claims. (*See* Protocol at pp. 4-5.)

- **Reporting**. The Protocol reflects the Program Administrator's commitment to provide the Court with regular monthly reports regarding the aggregate number and total value of claims paid each month through the Program. (*See* Protocol at p. 9.)

## III.    URGENT NEED TO COMMENCE OF PROGRAM OPERATIONS

In their fiduciary capacity, the Co-Executors engaged in extensive discussions with relevant parties in interest regarding the independent, fair, and timely resolution of the sexual abuse claims against Mr. Epstein. As noted above, many existing and potential claimants have expressed through their representatives their preference to participate in the Program rather than proceeding with litigation. Although there will be significant expense in administering the Program, the Co-Executors contemplate that the Program will substantially reduce the expenses to the Estate of litigating multiple lawsuits in numerous jurisdictions, and thus ultimately reduce expenses to the

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 5

benefit of all parties with an interest in the Estate, including claimants and creditors.[5]  The expedited nature of the Program will also ensure resolution and compensation to claimants in a far more timely manner than through litigation.

As described above, the Protocol is designed to ensure the proportionate restitution of approved claims for all claimants, in a manner that will provide similar compensation to similarly situated claimants.  The Program is in the best interests of both claimants and the Estate because, among other things, it avoids the potential of disproportionate and inconsistent awards and should help to reduce the time, exposure and burden of handling claims through the courts, which could involve years of litigation and appeals and consume enormous resources, along with inflicting on all affected parties costs attendant to delay and uncertainty.

## IV.  FUNDING FOR THE PROGRAM

As the Court is aware, the Attorney General on January 31, 2020 unilaterally imposed criminal activity liens on the Estate's bank account in the Virgin Islands, freezing then-available funds – funds over which this Court has exclusive jurisdiction – for administration of the Estate and implementation of the Program.[6]  On February 24, 2020, the Attorney General imposed similar liens against Southern Trust Company, Inc., one of the entities within the Estate.  The Co-Executors have challenged the validity of the Attorney General's liens, and moved the Superior

---

5.  In the absence of the Program, litigation alleging sexual abuse by Mr. Epstein has increased in scope, pace and expense:  there are now 22 separate lawsuits brought by 34 individual claimants pending against the Co-Executors, primarily in the state and federal courts of New York.  Discovery proceedings in those actions — including document demands, interrogatories, non-party subpoenas, and motions to compel — continue to ratchet up each passing week.

6.  Following the Co-Executors' resulting emergency motion for release of funds necessary for administration of the Estate, the Court directed the Attorney General to lift her liens in amounts sufficient to allow the Co-Executors to pay the Estate's operational expenses and legal fees.

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
 and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 6

Court to vacate them in their entirety.[7] However, pending determination of that motion – as well as this Court's approval of the estimated budget for and expenses of designing, implementing and administering the Program, submitted by the Co-Executors on February 4, 2020 – the Co-Executors and the Attorney General have reached consensual resolution in which the latter will promptly lift those liens to pay amounts owed for the Program and to begin funding of the Program's active operations, including payment of compensation determinations to eligible claimants.[8]

\*        \*        \*        \*

Because the need for the Program has grown increasingly urgent, and with the support of claimants' counsel and the USVI Attorney General – and because the remaining impediments have been resolved and the interested parties have consented to the Protocol attached as Exhibit A hereto – the Co-Executors intend to move forward with the Program on **Monday, June 15, 2020,** absent contrary direction from the Court.[9]

Respectfully,

Dated: June 1, 2020

*/s/ Christopher Allen Kroblin*
**CHRISTOPHER ALLEN KROBLIN, ESQ.**
**ANDREW W. HEYMANN, ESQ.**
**WILLIAM L. BLUM, ESQ.**
**SHARI N. D'ANDRADE, ESQ.**
**MARJORIE WHALEN, ESQ.**

---

7.  See *Expedited* Motion to Vacate Liens, dated March 17, 2020 (*Government of the U.S. Virgin Islands vs. Indyke*, *et al.,* Case No. ST-20-CV-14).  The Attorney General filed no response to that expedited motion.

8.  As part of that resolution, the Co-Executors agreed not to assert that the Attorney General's release of such limited funds will act as a waiver of Government's ability, if any, to object to the Program's administrative expenses, including those paid with these initial funds.

9.  The Co-Executors recognize the extraordinary difficulties imposed by the coronavirus pandemic on the functioning of the courts of the Virgin Islands.  To the extent the Court wishes to conduct a remote conference in this matter, either telephonically or via videolink, the Co-Executors and their counsel will of course make themselves available.

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
 and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 7

V.I. Bar Nos. 136, 966, 1221 & R2019
KELLERHALS FERGUSON KROBLIN PLLC
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, V.I. 00802
Telephone: (340) 779-2564
Facsimile: (888) 316-9269
Email:  wblum@solblum.com
        ckroblin@kellfer.com
        sdandrade@kellfer.com
        mwhalen@kellfer.com

*Estate of Jeffrey E. Epstein*
Co-Executors' Status Report on Voluntary Compensation Program
 and Presentation of Program Protocol

*Probate No. ST-19-PB-80*
Page 8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of June 2020, I caused a true and exact copy

of the foregoing **Co-Executors' Status Report on Voluntary Claims Resolution Program and**

**Presentation of Program Protocol** to be served via electronic mail upon:

John H. Benham, Esq.
Law Office of John H. Benham, P.C.
P.O. Box 11720
St. Thomas, VI 00801
*john@benhamlawvi.com*

Douglas B. Chanco, Esq.
ChancoSchiffer P.C.
3355 Lenox Road, Suite 750
Atlanta, GA 30326
*doug@csfirm.com*

Richard Bourne-Vanneck, Esq.
Law Offices of Richard Bourne-Vanneck
9800 Buccaneer Mall Suite #9
St. Thomas, VI 00802
*richard@rpvblawoffices.com*

John K. Dema
Law Offices of John K. Dema
1236 Strand Street, Suite 103
St. Croix, VI
*jdema@demalaw.com*

Denise N. George, Esq.
Attorney General
Ariel M. Smith, Esq.
Chief, Civil Division
Virgin Islands Department of Justice
34-38 Krondprinsdens Gade
GERS Complex, 2nd Floor
St. Thomas, Virgin Islands 00804
*denise.george@doj.vi.gov*
*ariel.smith@doj.vi.gov*

A. Jeffrey Weiss, Esq.
A.J. Weiss & Associates
6934 Vessup Lane
St. Thomas, VI 00802
*jeffweiss@weisslaw-vi.net*

Sean Foster, Esq.
Marjorie Rawls Roberts, P.C.
P.O. Box 6347
St. Thomas, VI 00804
*sean@marjorierobertspc.com*

Kevin F. D'Amour
Gaylin Vogel, Esq.
5143 Palm Passage, 18b & 19b
St. Thomas, VI 00802
*kevin.damour@comcast.net*
*gaylin.vogel@comcast.net*

Melody D. Westfall, Esq.
Westfall Law PLLC
5032 Anchor Way, Suite 8
Christiansted, St. Croix 00820
*mwestfall@westfalllaw.com*

Kevin Boyle, Esq. (*Pro Hac Vice*)
Robert Glassman, Esq. (*Pro Hac Vice*)
PANISH SHEA & BOYLE LLP
11111 Santa Monica Blvd., Ste. 700
Los Angeles, CA 90025
*boyle@psblaw.com*
*glassman@psblaw.com*

*/s/ Shari N. D'Andrade*



**Independent**

**Epstein Victims' Compensation Program**

**<u>PROTOCOL</u>**

**May 29, 2020**

### I.   <u>PURPOSE AND OVERVIEW</u>

The Epstein Victims' Compensation Program (the "Program") is a voluntary, independent Program that has been established to compensate and resolve the claims of victims-survivors of sexual abuse by Jeffrey Epstein ("Epstein").

The Estate of Jeffrey Epstein (the "Estate") has retained the services of nationally recognized claims administration experts Kenneth R. Feinberg, Camille S. Biros and Jordana H. Feldman to design the Program.  Ms. Feldman will also serve as the Administrator of the Program (the "Administrator").  This Protocol reflects input from victims-survivors, their lawyers, other potentially interested parties, and representatives of the Estate.

Through the Program, the Estate wishes to acknowledge the wrongs endured by victims-survivors and offer them an opportunity to voluntarily resolve their individual claims for such sexual abuse.

The Program is governed by the following non-exclusive guiding principles:

- The Program is purely voluntary. It does not affect any rights a Claimant may have unless and until the Claimant accepts the offered compensation and executes a Release.  A Claimant may reject the offer of compensation and may stop participating in the Program and withdraw the claim at any time prior to execution of the Release.

- The Program is independent and will in no way be administered, controlled or overseen by the Estate.  The Administrator is responsible for all decisions relating to the review, processing and evaluation of individual claims submitted to the Program.  The Administrator will have final, binding and exclusive authority to determine Claimant eligibility and the valuation of each eligible individual claim. Decisions of the Administrator made pursuant to this Protocol are not subject to review or modification in any way by the Estate or any other party or entity.

- There is no cap or limitation on the aggregate amount of funds available to compensate all eligible Claimants or on the amount of compensation to be made to each individual Claimant.  Each individual claim will be evaluated separately by the Administrator.   The Administrator will determine, in her sole and exclusive discretion, issues of eligibility and the amount of compensation and the Estate will pay all eligible claims based on the Administrator's determination.

- All Claimants will be treated with respect, dignity and fairness without regard to race, color, sexual orientation, national origin, religion, gender or disability.   To ensure claims will be adjudicated fairly, the Administrator will manage the process so that all Claimants can equally access the Program's claim process.   Individuals with disabilities will be given the opportunity to effectively communicate their claims and to request special process accommodations.

The Program is available to all victims-survivors regardless of where they were harmed, when they were harmed, whether the claim is time-barred by the applicable statute of limitations, and whether they have previously filed a lawsuit against or settled with Epstein and/or the Estate.

The exclusive claims period for filing a claim pursuant to this Protocol shall commence on the to-be-determined Effective Date and shall conclude nine (9) months after that date ("Filing Deadline").   All individual claims filed with the Program must be filed within this period.

To complement the Program's resources, the Administrator will, at her discretion and with the consent of the Claimant, consult with Professor Marci A. Hamilton, a nationally recognized sexual abuse expert, leading legal academic and advocate of victims' rights.  Ms. Hamilton's role will be to further inform the Administrator and her staff about the dynamics of sexual abuse, common responses to sexual abuse, and the impact of sexual abuse on victims; to serve as a resource for the Administrator in developing or updating policies and procedures; to advise the Administrator regarding sensitivities involved in interactions with victims; and to serve as a referral source for the Administrator in providing post-determination information to claimants who seek guidance, counseling or other services.   The Administrator may, at her discretion and with the Claimant's prior written consent, request that Ms. Hamilton review an individual claimant file.  The Administrator will determine on a case-by-case basis, in her discretion, the need to anonymize individual claimants' files before sharing them with Ms. Hamilton. As set forth above, the Administrator is solely responsible for all decisions relating to the administration of the Program, including the review, processing, evaluation, and determination of individual claims submitted to the Program.

During the term of the Program, Ms. Hamilton will not meet or speak with a Claimant or her representatives concerning any aspect of the Program without the Administrator present. Ms. Hamilton will maintain in strict confidence and will not disclose outside the Program any information she obtains through her participation in the Program, including individual Claimants' submissions.

## II.   ELIGIBILITY REQUIREMENTS

### A.  Eligibility Criteria

The persons eligible to participate in this Program are individuals who allege they were sexually abused by Epstein.  In addition, the following criteria apply:

- The claim of sexual abuse must be directed against Epstein.

- An individual whose claim is time-barred by the applicable statute of limitations may participate in the Program provided that other eligibility criteria are met.

- An individual who previously entered into a settlement agreement resolving a claim of sexual abuse against Epstein may participate in the Program provided that other eligibility criteria are met.

- An individual who allegedly assisted Epstein in procuring other victims-survivors may participate in the Program where there is a credible basis to determine that the individual acted under duress as a result of her own sexual abuse by Epstein, provided that other eligibility criteria are met.

- If the Claimant chooses to accept the offered compensation, the Claimant must dismiss with prejudice any existing lawsuits, legal actions or claims filed against the Estate or related entities and/or related individuals.  The Claimant must provide proof of such dismissal along with or prior to the signed acceptance of the compensation determination offer letter and executed Release in order to receive payment.

### B.  Legal Representatives of Claimants

An individual may file a claim on a victim's behalf where that individual has been granted legal authority to act in a representative capacity pursuant to appropriate law.  The "Legal Representative" of an individual Claimant shall mean:  (1) in the case of a Claimant who is currently a minor, a parent or legal guardian authorized by law to serve as the minor's legal representative; (2) in the case of an incompetent or legally incapacitated Claimant, a person who has been duly appointed as the Claimant's legal representative in accordance with applicable law; (3) in the case of a deceased Claimant, a person who has been duly appointed to act as the personal representative of the Claimant's estate by a court of competent jurisdiction and is authorized to file and compromise a claim; or (4) an attorney authorized to represent the Claimant for purposes of pursuing a claim through this Program.

Legal Representatives must provide proper documentation demonstrating representative capacity.  Such proof may include a power of attorney; documentation showing the individual's appointment as guardian or guardian ad litem; documentation showing the individual's appointment as personal representative of the Claimant's estate (such as letters of administration); a copy of a retainer

agreement showing legal representation signed by both the Claimant and the attorney or a signed statement by an adult Claimant and the attorney that a licensed/admitted attorney is acting on her behalf.

### III.   CLAIMS ADMINISTRATION - SUBMISSION, EVALUATION AND DETERMINATION

#### A.   Claims Submission Process

Individuals who have filed a lawsuit, legal action or claim against Epstein and/or the Estate or have otherwise been identified as a victim of Epstein by their attorney to the Administrator on or before the Effective Date will be sent a Claim Form and other relevant Program information, including Instructions for completion and submission of the Claim Form and a copy of this Protocol.  Individuals who have filed a lawsuit need not agree to a stay of litigation or make any other concession in any pending litigation to be eligible to participate in the Program.  Likewise, individuals who have not yet filed a lawsuit remain free to file a lawsuit and engage in litigation concurrently with participation in the Program.  Individuals must, however, dismiss with prejudice any and all existing lawsuits, legal actions and claims prior to or at the time of acceptance of a compensation determination offer in order to receive payment.

Individuals who have not filed a lawsuit, legal action or claim against Epstein and/or the Estate or have not otherwise been identified as a victim of Epstein by their attorney to the Administrator on or before the Effective Date may register to participate in this Program on the Program's website at www.EpsteinVCP.com. To register, such individuals must complete a questionnaire setting forth their name, contact information, a summary description of the nature of the claim and other requested information. Upon registration, the Administrator will perform a preliminary review to consider if the individual is eligible to participate in the Program.  If the Administrator deems that the individual is eligible to participate in the Program, she will then send that individual a Claim Form and other relevant Program information.

Note:  The fact that an individual is sent a Claim Form and other relevant Program information indicates that the Administrator has determined that such individual is eligible to participate in the Program.  It does not indicate that the Administrator has determined that such individual is eligible to receive compensation.  That determination is made only after a Claim Form and all required documentation has been submitted and evaluated by the Administrator.

Registrations for individuals who have not filed a lawsuit, legal action or claim against Epstein and/or the Estate or have not otherwise been identified as a victim of Jeffrey Epstein by their attorney to the Administrator on or before the Effective Date will be accepted by the Administrator from the Effective Date through a date that is 45 days prior to the Filing Deadline ("Registration Deadline").  It is important to note that the Registration Deadline is separate from, and precedes, the Filing Deadline.  As explained above, all claims must be filed by the Filing Deadline.

**All Claim Forms must be completed to the best of a Claimant's ability and filed no later than the Filing Deadline.** Claim Forms should be uploaded to the Program website at www.EpsteinVCP.com, or mailed via overnight courier (a pre-paid courier voucher will be included with each packet) to the Administrator at the following address:

> Epstein Victims' Compensation Program
> Attn: Jordana H. Feldman, Administrator
> P.O. Box 65488
> Washington, D.C. 20035

Claimants are invited to provide documentation identified in the Claim Form, and any other corroborating or supporting information sufficient to substantiate the claim, satisfy eligibility requirements, and allow the Administrator to review, process and evaluate the claim. If the claim is being presented by a Legal Representative, then the Legal Representative will be responsible for submitting the necessary documentation relating to the represented Claimant.

Additional documentation may be requested at the discretion of the Administrator. Both the Claimant and the Estate will be afforded the opportunity to submit to the Administrator any information deemed relevant to the Administrator's evaluation and determination of the claim before the Administrator's final disposition of the claim.

If a Claimant submits an incomplete or deficient claim, the Administrator will notify the Claimant, explain the additional information that is needed, and work with the Claimant or the Claimant's Legal Representative (where applicable) to assist in submitting a complete claim.

### B. Claims Evaluation and Determination

Claims will be evaluated in the order in which they are received, with the Administrator evaluating each submitted individual claim in a prompt and fair manner. Claims will only be determined once all required documentation has been submitted to the Administrator, with due consideration granted to Claimant's good faith explanations for delays and/or absence of documentation.

#### 1. *Factors Considered in Evaluating Claims*

As to each individual claim, the Administrator will determine, in her sole discretion based upon all of the information available, whether the allegations of sexual abuse are credible. The Administrator will consider appropriate factors and corroborative support, including but not limited to:

- The level of documentation, corroboration or other circumstantial evidence regarding the nature and extent of the abuse, the frequency, location and other details of the abuse, and the age of the victim at the time of the abuse. Non-exhaustive examples of such evidence include (i) medical or psychiatric counseling/therapy records relevant to the abuse, and (ii) contemporaneous written notification or other correspondence (e.g., letters, emails) of the abuse by the Claimant to law enforcement authorities, parents, friends or others. The Administrator acknowledges that some Claimants may not be able to provide any

documentation to corroborate their Claim based on the nature and circumstances of Epstein's conduct. If a Claimant's written and oral presentation is deemed to be credible by the Administrator, the Claimant may still be eligible for compensation under the Program.

- Whether there exists any information and/or pertinent findings offered by the appropriate Office of the District Attorney, United States Attorney's Office, or other law enforcement agency.

- Whether the Administrator finds the claims of the individual to be credible after complete review of all relevant documentation and other evidence provided by the Claimant and the Estate.

As to each individual claim, the Administrator will determine, in her sole discretion based upon all of the information available, the amount of compensation that should be offered to each eligible Claimant. The Administrator will consider appropriate factors and corroborative support, including but not limited to:

- The nature, duration and extent of the sexual abuse suffered by the Claimant.

- The age of the Claimant at the time of the sexual abuse.

- The nature and extent of the Claimant's physical or psychological damage resulting from the sexual abuse, and the effect of the sexual abuse on the Claimant.

- The credibility of the claim based upon all of the facts and circumstances, supporting documentation and corroborating evidence.

- Whether the Claimant previously entered into a settlement agreement with Epstein and received a payment pursuant to such agreement.

The Administrator will confidentially send the Claimant a compensation determination offer letter including the following: (1) the Administrator's eligibility decision regarding the claim; (2) the amount of compensation offered; (3) a Release to be signed by the Claimant if the Claimant accepts the offered compensation; and (4) a Payment Option Form. The Administrator's offer shall be valid for 60 days from the date of the compensation determination offer letter.

The Administrator's determinations in this Program will not be binding on any potential criminal investigation involving Claimant's claims.

2. *Opportunities to be Heard*

The Claimant will be afforded an opportunity to be heard, either before or after the Administrator renders her determination. Upon request by the Claimant, the Administrator will be available to meet in person (as practicable in light of the COVID-19 pandemic), by video conference, or by teleconference to further discuss the claim. These meetings are completely optional and voluntary. Requests to meet

with the Administrator should be sent by email to ClaimantServices@EpsteinVCP.com and will be scheduled at a mutually convenient time and location. The Administrator may also request a meeting with a Claimant or her Legal Representative at a reasonable mutually convenient time and location, though the Claimant is not obligated to attend any such meeting.

### 3. Release

By submitting a claim to the Program, a Claimant is seeking to resolve all claims relating to allegations of sexual abuse against Epstein and/or the Estate, and related entities and individuals as set forth in the Release. If a Claimant chooses to accept the offer of compensation pursuant to the Program, the Claimant will be required to sign and execute a full Release, in a form satisfactory to the Estate, of all past and future claims (including *lis pendens*, writs of attachment, etc.) relating to such allegations of sexual abuse against the Estate, related entities and/or related individuals. A Claimant may reject the offer of compensation and may stop participating in the Program and withdraw the claim at any time prior to the execution of the Release.

The Release will waive any rights the Claimant and her heirs, descendants, legatees or beneficiaries may have to assert any claims relating to allegations of sexual abuse against the Estate, related entities and/or related individuals, to file an individual legal action relating to such allegations, or to participate in any civil legal action associated with such allegations, except as a witness. However, the Release will not operate to preclude or limit the Claimant's ability to report and discuss allegations of sexual abuse with law enforcement officials or anyone else. In other words, the Release will not impose any rules of confidentiality on claimants, who are expressly permitted to discuss their allegations without restriction, should they choose.

Before signing a Release, the Claimant must consult with an attorney selected by the Claimant. If the Claimant is not represented by an attorney, the Program will provide an attorney to provide free legal counseling to the Claimant for the sole purpose of advising the Claimant concerning the language and binding nature of the Release.

No one affiliated with the Program will provide tax or legal advice to those receiving payments under the Program. Claimants are urged to consult with a tax advisor concerning any questions regarding tax liability for payments pursuant to the Program.

### 4. Payments

Upon the Claimant's acceptance of the Administrator's determination, the Administrator's receipt of the Claimant's executed Release and, where applicable, dismissal with prejudice of any existing lawsuit, legal actions or claims against the Estate or related entities and/or related individuals, the Administrator will initiate payment by check or electronic funds transfer to each eligible Claimant as directed by the Claimant. Checks will be sent to Claimants via overnight courier service. All payments made under the Program shall be for a Claimant's physical injuries, physical sickness and

resulting emotional distress within the meaning of Section 104(a) of the Internal Revenue Code.

### C.  Program Integrity

For the purpose of protecting both the integrity of the Program and financial resources for eligible Claimants, the Administrator will institute all necessary measures to prevent payment of fraudulent claims, including taking steps to verify claims and analyze submissions for inconsistencies, irregularities or duplication.

Each Claimant who signs the Claim Form at the time of submission certifies that the information provided in the Claim Form is true and accurate to the best of the Claimant's knowledge, and that the Claimant understands that false statements or claims made in connection with such submission may result in fines, imprisonment and/or any other remedy available by law.  Claims that appear to be potentially fraudulent or to contain information known by the Claimant to be false when made will be forwarded to federal, state or local law enforcement agencies and/or the appropriate Office of the District Attorney and/or United States Attorney's Office for possible investigation and prosecution.

### D.  Confidentiality/Privacy

The Program is confidential.[1] By filing a claim with the Program, the Claimant or her Legal Representative (where applicable) agrees that information submitted by the Claimant pursuant to the Program will be used and/or disclosed by the Administrator and her designees only for the following purposes:

1)  Processing and evaluating the Claimant's claim;
2)  Administering the Program and other Program-related work; and
3)  Reports to law enforcement where appropriate, related to potentially fraudulent claims.

When documents or other information maintained or submitted by the Estate become part of a Claimant's file for purposes of the Program, such materials will be reviewed by the Administrator to assist in processing and evaluating the claim, but will otherwise remain confidential. No information provided by Claimants will be provided to the Estate except for the Claimant's name and the date(s) and location(s) of the alleged abuse, for the sole purpose of processing and evaluating the claim and, for purposes of the Release, the names of any other individual(s) to whom or by whom the Claimant alleges she was trafficked or sexually abused.  The Estate has agreed that no information obtained solely through the Program will be disclosed publicly or used by the Estate in defending itself from any claim, regardless of forum.  The Program's files are not available for inspection, review or copying by the Estate or the Claimant or her representatives during or after the Program, and all pertinent mediation privileges, settlement privileges and other privileges apply.

---

[1] All parties agree that they are using the services of a third-party administrator to help reach a resolution of individual claims of sexual abuse, and that this Program is entitled to confidentiality, privileges (mediation, settlement and all other pertinent privileges), and protection from disclosure under applicable law.

To protect the privacy of Claimants participating in the Program, all personal information provided by the Claimant during this process will be returned or destroyed within one year after the conclusion of the Program.

Individual Claimants are not bound through the Program by any rules of confidentiality. Claimants may, at their sole and voluntary option, disclose information in their possession regarding their claim, their compensation and their experience with the Program.

All confidentiality requirements are subject to law, regulation and judicial process.

E. Reporting

The Administrator shall, on a monthly basis, confidentially provide reports regarding the number and total value of claims paid each month to the Probate Court of the United States Virgin Islands and the Attorney General of the United States Virgin Islands.  Such reports will report on an aggregate level only.  No individual Claimant information will be published or disclosed in a way that compromises Claimant confidentiality.